AO 106 (Rev. 04/10)  Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/ Stephen C. Hoch 2/16/24

# UNITED STATES DISTRICT COURT
## for the
### Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>**Premises known as 11117 N. Blackwelder, Ave.,<br>Oklahoma City, Oklahoma, the surrounding curtilage,<br>and any vehicles, garages, and outbuildings thereon** | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  M-24-158    -STE |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____**Western**_____ District of _____**Oklahoma**_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Manufacturing, possessing, distributing and/or selling of controlled substances |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Rachel Cathie, Special Agent (HSI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __**Feb 17, 2024**__

*Judge's signature*

City and state: _____

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

**Lawton, OK**

# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF A RESIDENCE LOCATED AT 11117 N. BLACKWELDER AVE, OKLAHOMA CITY, OK 73120** | **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Rachel Cathie, being duly sworn, depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for an anticipatory warrant to search the premises known as 11117 N Blackwelder Ave., Oklahoma City, OK 73120, hereinafter "**PREMISES**," further described in **Attachment A**, for the items specified in **Attachment B** hereto, which constitute instrumentalities, fruits, and evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846, including possession and conspiracy to possess with intent to distribute controlled substances.

2.     I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since September 2019.  I am presently assigned to

the HSI office in Oklahoma City, Oklahoma (hereinafter referred to as HSI Oklahoma City).

3.      I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

4.      I have been involved in a wide variety of investigative matters, including the unlawful importation and distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) and 846.  I have received approximately 24 weeks of specialized training at the Federal Law Enforcement Training Center in the enforcement of federal laws.  I have arrested individuals who have been involved in and have personal knowledge of transporting and concealing controlled substances. I have testified in judicial proceedings concerning the prosecution for violations of laws related to the smuggling and trafficking of contraband, including controlled substances.  I have participated in the execution of search and arrest warrants, conducted physical surveillance, and analyzed records documenting the purchase and sale of illegal drugs. I have also researched subjects and have spoken with other local and federal law-enforcement officers regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute drugs. Through my

2

training and experience, I have become familiar with some of the manners in which illegal drugs are imported, distributed, and sold, as well as the methods used by drug smugglers to disguise the source and nature of their profits.

5.     In light of my training and experience, I know the following:

a.     I am aware that drug dealers frequently keep assets, records, and documents related to their drug distribution organizations, and monies derived from the sale of illegal drugs, in their own residences, as well as in safe houses where they are not easily detectable by law enforcement officials conducting investigations. They often use these places to further drug trafficking activities and store associated items to avoid detection by law enforcement.  Further, I am aware that these individuals will frequently maintain these houses in the names of other individuals, also to avoid detection by law enforcement agencies;

b.     I am aware that even though relevant assets, telephones, and properties are often held in alias or third-party names, drug dealers continue to use and exercise dominion and control over them;

c.     I am aware that drug dealers often maintain on-hand quantities of currency and drugs in order to finance their ongoing drug business;

d.     I am aware that drug dealers maintain books, records,

3

receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, even though such documents may be in code. It is particularly common that individuals engaged in drug trafficking will keep ledgers related to their illegal activity because drug dealers commonly "front" drugs (provide controlled substances on consignment) to their clients, and are frequently "fronted" drugs by their own sources of supply as part of their dealing operations;

e.    I am aware that the aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where the drug dealers have ready access to them, i.e., homes, automobiles, businesses and safe houses, and that the most common place for these items to be located is at their primary residence;

f.    I am aware that drug dealers will frequently keep records, notes, ledgers, contact lists, and other evidence of their drug trafficking on cellular phones and electronic devices, and that they often keep such cellular phones or electronic devices on their person or in the properties that they control. Further, I am aware that drug dealers will often have multiple cellular phones and will frequently use more than one cellular phone to help conduct their drug trafficking. I am also aware that drug

4

dealers will use computers and tablets to further their drug trafficking through the use of digital communication, including, but not limited to, e-mail and instant messaging;

g.      I am aware that it is common for drug dealers to conceal contraband, proceeds of drug sales, and records of drug transactions, drug sources and drug customers, in secure locations within residences, garages, storage building, safes, offices, and safety deposit boxes for ready access, and also to conceal such items from law enforcement agencies;

h.      I am aware that when drug dealers acquire large sums of proceeds from the sale of drugs, they attempt to legitimize their profits to include co-mingling profits with profits earned from legitimate business activities;

i.      I am aware that to accomplish these goals, drug dealers utilize, among other things, banks and their attendant services, securities, cashier checks, money drafts, letters of credit, brokerage houses, real estate companies, shell corporations, and business fronts;

j.      I am aware that drug dealers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers for their associates in the drug dealers'

5

organization, even if said items may be in code;

k.    I am aware that drug dealers commonly take photographs (or cause photographs to be taken) of themselves, their associates, their property and their products, and that these dealers usually maintain these photographs in their possession and at their residence;

l.    I am aware that firearms are commonly used by drug dealers to protect their inventory and currency.

6.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.    Based on the facts set forth herein, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846, have been committed and will be committed at the **PREMISES**. There is also probable cause to believe that the location information described in **Attachment B** will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

8.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.     On February 13, 2024, members of FedEx Corporation's (FedEx) security team notified HSI's Memphis, Tennessee office that they had identified a package that they believed contained illegal narcotics.[1]   The package was originally shipped from a Walmart store in Beaumont, California. The package's shipping label listed the shipper as "Jamar Lashane Bedford," with an address of 11741 Blue Moon Ave., Oklahoma City, OK 73162.[2]   Jamar Lashane Bedford has multiple felony convictions, including convictions for Second Degree Robbery, Kidnapping, and Trafficking in Illegal Drugs (Methamphetamine).   *See* CF-2013-1124 (Oklahoma County); CF-2013-998 (Oklahoma County).

10.    The package was addressed to "Ckla Bedford," at the **PREMISES's** address.  No positive results were returned for the name "Ckla

---

[1] The package contained an Air Waybill number of 270542717742.

[2] According to the Oklahoma County Assessor, the owner of 11741 Blue Moon Ave. is an individual named Billie Bedford.

Bedford" using law enforcement indices and open-source databases. One name is linked to the **PREMISES's** address: Shantice Gissandaner. This name was found to be associated through utilities services.[3] Shantice Gissandaner does not have any relevant criminal history.

11.    Based on my training and experience, I know that drug dealers often use fictitious names, or names of innocent intermediaries, to obscure their drug trafficking activities. I also know, based on my training and experience, that shipping a package to a factiously-named recipient is consistent with drug trafficking, and that drug traffickers oftentimes send packages containing illegal drugs to addresses of trusted individuals.

12.    On February 14, 2024, Special Agents from HSI Memphis retrieved the package—which FedEx had previously opened, in accordance with its internal policies—from FedEx's Armory, which is located in Memphis.

13.    Inside the package, agents recovered a plastic-wrapped bundle, which contained a number of individually-wrapped bundles. The substance inside the individually-wrapped bundles field tested positive for

---

[3] Additionally, on February 16, 2024, law enforcement officers observed a vehicle parked in front of the **PREMISES** bearing a license plate registered to Shantice Gissandaner.

methamphetamine.  At this time, HSI Memphis seized the package and contacted HSI Oklahoma City.

14.    On February 15, 2024, HSI Oklahoma City received the package from HSI Memphis.  I, along with Special Agent Jon Dangle, opened the package and unwrapped the plastic bundle.  Inside the plastic bundle, I located two plastic bags and one vacuum sealed bag; each contained crystal-like, white rocks, which field tested positive for methamphetamine, as confirmed by a TruNarc laser testing device, at a total weight of approximately 1.34 kilograms.

15.    Also inside the package, I located seven small, plastic bags containing blue pills which were labeled with an "M" on one side and a "30" on the other.  I, along with Special Agent Dangle, tested these pills using a rapid response forensic drug test kit.  The pills field tested positive for fentanyl, weighing approximately 760 grams.

16.    Law enforcement has removed the majority of the actual methamphetamine and all the fentanyl from the package prior to the anticipated delivery. The majority of the methamphetamine has been replaced with sham (a substance that looks like methamphetamine but is not), but some amount of actual methamphetamine will remain in the package.

## CONDITIONS PRECEDENT TO EXECUTION
## OF THE SEARCH WARRANT

17.    On or about February 20, 2024, HSI Oklahoma City Special Agents, in coordination with Drug Enforcement Administration (DEA) Oklahoma City and local law enforcement partners, will deliver the package to the **PREMISES**.  Upon delivery of the package, agents will maintain visual observation of the **PREMISES** to ensure no person(s), or the package, leave the **PREMISES**.  An electronic sensor will be inserted in the package to indicate when it has been opened or moved from the original delivery location. Once the package is taken into the residence, agents will either wait until the inserted sensor indicates the package has been opened or wait a reasonable time (approximately three minutes) for the package to be opened, unless within that three-minute time frame, some person(s) attempt(s) to remove the package or contraband from the residence. After any of the foregoing anticipated or triggering events occur, agents will then execute the anticipatory search warrant.

## CONCLUSION

18.    I submit that this affidavit supports probable cause for a search warrant to search the **PREMISES** described in **Attachment A** to seek and seize the items described in **Attachment B.**

10

Respectfully submitted,

Rachel Cathie
Special Agent
Homeland Security Investigations


Subscribed and sworn to before me on this 17th day of February, 2024.

SHON T. ERWIN
United States Magistrate Judge

11

## ATTACHMENT A

*Property to be searched*

The property to be searched is located at 11117 N Blackwelder Ave., Oklahoma City, OK 73120. The primary location to be searched is further described as a single-story home with a gray brick exterior and white trim, with the numbers "11117" displayed above the garage to include all appurtenances, outbuildings, and vehicles located on the property. The residence is as shown below:





# ATTACHMENT B

## *Property to be seized*

1.      Evidence relating to violations of 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance, and 21 U.S.C. § 846, conspiracy to commit possession with intent to distribute a controlled substance, including methamphetamine and fentanyl, Schedule II controlled substances, specifically:

    a.  Books, records, receipts, notes ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances;

    b.  Paper, tickets, notes, schedules, receipts and other items relating to domestic and international travel;

    c.  Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks, receipts, passbooks, bank checks, safe deposit box keys and other items evidencing the obtaining, secreting, transfer and/or expenditure of money;

    d.  United States Currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal narcotics trafficking;

    e.  Photographs, in particular, photographs of co-conspirators, of

assets    and/or    controlled    substances,    in    particular
methamphetamine;

f.  Indicia of occupancy, residency and/or ownership of the premises
described above including, but not limited to, utility and telephone
bills, canceled bills, canceled envelopes, and keys;

g.  Firearms, magazines, ammunition, and any records relating to the
purchase or transfer of firearms or firearm components;

h.  Controlled substances and related paraphernalia;

i.  Receipt for items evidencing expenditures in amounts indicative of
the  proceeds  of  drug  distribution  including,  but  not  limited  to,
clothing, furniture, electronic equipment, weapons, and vehicles;

j.  Vehicles used to facilitate the smuggling of illegal narcotics and or
purchased with illegal narcotic proceeds;

k.  Cellular  phones  used  as  a  method  of  communicating  during
narcotic  trafficking  events  that  often  contain  co-conspirator's
telephone numbers in memory and are often used by large-scale
controlled substances traffickers as a tool of the trade;

l.  Computer hardware, software, peripheral devices, documentation,
data  security  devices  and  electronic  storage  devices  which  may
contain items described above to the extent such equipment and
devices are not otherwise subject to seizure, agents shall promptly

2

arrange for any stored electronic information to be copied and preserved as evidence so that the equipment and devices may be returned within a reasonable time;

m. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

n. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

o. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

p. evidence of the lack of such malicious software;

q. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the

computer user;

r.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

s.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

t.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

u.  evidence of the times the COMPUTER was used;

v.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

w.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

x.  records of or information about Internet Protocol addresses used by the COMPUTER;

y.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

z.  contextual information necessary to understand the evidence

4

described in this attachment.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

Seizures of electronic devices clearly belonging to individuals who are not associated with the criminal activity is not authorized.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD- ROMs, and other magnetic or optical media.